IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BETTY J. VALENTINE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 13-2026-GMS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM**

Plaintiff Betty J. Valentine ("Valentine") appeals from a decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. The court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the court are the parties' cross-motions for summary judgment. (D.I. 14, 19). Valentine asks the court to reverse the Commissioner's decision and order benefits or remand for further proceedings. (D.I. 15 at 16). The Commissioner opposes this motion and requests that the court affirm her decision. (D.I. 20 at 8). For the reasons set forth below, Valentine's motion for summary judgment will be DENIED and the Commissioner's motion for summary judgment will be GRANTED.

1

I. BACKGROUND

A. Procedural History

Valentine filed an application for DIB on November 8, 2007. (Tr. 21). In her application, she alleged disability beginning June 1, 2006 due to emphysema, rheumatoid arthritis, depression, and a history of heart attack. (Tr. 21, 23). Valentine's claim was denied initially on April 1, 2008 and upon reconsideration on May 27, 2008. (Tr. 21).

Valentine requested a hearing before an Administrative Law Judge ("ALJ") which was held on August 18, 2009. (*Id.*). On September 22, 2009, the ALJ issued an unfavorable decision. (Tr. 117-28). The ALJ concluded that Valentine had acquired skills from past relevant work as an office worker and retail manager that were transferable to other occupations with jobs existing in significant numbers in the national economy. (Tr. 118, 126). Valentine requested that the Appeals Counsel review the ALJ's decision. (Tr. 130).

The Appeals Council vacated the ALJ's decision and remanded the case because of an error of law. (Tr. 131). According to the Appeals Council, Valentine became 55 years old in January 2007, and therefore, changed to the "advanced age" category. (*Id.*). The ALJ's decision, however, did not address whether Valentine could transfer her acquired work skills with "a minimal amount of vocational adjustment," as required when the claimant has attained "advanced age." (*Id.* citing Social Security Ruling 82-41 and 20 CFR 404.1568(d)(4)). Therefore, further evidence from a vocational expert was necessary to clarify the issue. (Tr. 131).

In the interim, Valentine filed a second application for disability benefits on October 8, 2009. (Tr. 130). The Disability Determination Services ("DDS") found that Valentine was

2

disabled as of September 18, 2009.[1] (*Id.*). Thus, the only remaining issue on remand was whether Valentine was disabled before September 18, 2009.

On remand, Valentine had a hearing before the ALJ on December 14, 2011. (Tr. 22). The ALJ issued an unfavorable decision on January 27, 2012, finding that Valentine was not disabled before September 18, 2009. (Tr. 21-37). The Appeals Council denied Valentine's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 3-5). On December 12, 2013, Valentine filed a Complaint in this court seeking judicial review of the ALJ's decision. (D.I. 1).

### B.     The ALJ's Findings

Valentine's motion rests primarily on claims that the ALJ committed errors of law. Accordingly, the facts are better understood within the context of the process an ALJ uses to evaluate each claim for DIB. The ALJ uses a five-step process summarized as follows: (1) if the claimant currently is engaged in substantial gainful employment, she will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," she will be found not disabled; (3) if the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant will be presumed disabled; (4) if the claimant can still perform work she has done in the past despite the severe impairment, she will be found not disabled; and (5) finally, if the claimant cannot perform past relevant work, the ALJ will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to

---

[1]     It appears that the record does not contain the DDS's decision finding Valentine disabled. The remand order of the Appeals Council states that the DDS's favorable determination was "supported by the results of an updated pulmonary function test performed on December 17, 2009." (Tr. 130). It is unclear whether that was an observation of the Appeals Council or the DDS.

3

determine whether she is capable of performing other work in the national economy, and if she is, the claimant will be found "not disabled." 20 C.F.R. § 404.1520.

Valentine was born on January 22, 1952. (Tr. 51). She was 54 years old at the time of the alleged onset of her disability in 2006 and 57 years old at the time that the ALJ issued her first decision. (Tr. 126). At step two, the ALJ found that Valentine had the following severe impairments: obesity, asthma, chronic obstructive pulmonary disease ("COPD"), emphysema, and mild rheumatoid arthritis. (Tr. 24, 119). Valentine argued at step three that her COPD met or equaled Listing 3.02 for Chronic Pulmonary Insufficiency. (Tr. 49). The ALJ did not agree. (Tr. 30). At step four, the ALJ found that Valentine had the residual functional capacity to perform only sedentary work, except that she must avoid climbing ladders, ropes, and scaffolds, and must avoid concentrated exposure to temperature extremes, vibrations, poor ventilation, fumes and gases, and hazards including unprotected heights and moving machinery. (Tr. 30, 122).

Valentine was a retail manager from 1988 to 1992 and an office worker from 1999 to 2004. (Tr. 52-53). According to the Dictionary of Occupational Titles, the retail manager position requires a medium level of exertion and the office worker position requires a light level of exertion. (Tr. 79). Given that Valentine was limited to only sedentary work, the ALJ found that Valentine could not perform her past relevant work. (Tr. 35, 118, 126). Thus, the ALJ proceeded to step five to determine if Valentine had acquired skills from her past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy.

At the first hearing, a Vocational Expert ("VE") testified that Valentine had acquired the following transferrable skills from her position as an office worker: knowledge of office equipment, knowledge of office procedures, and recordkeeping skills. (Tr. 80). The VE testified

4

that Valentine acquired "the same skills" from her position as a retail manager. (Tr. 80-81). Additionally, she would have acquired some managerial skills. (Tr. 81).

The ALJ asked the VE to consider a hypothetical individual with Valentine's age, education, and residual functional capacity. (Tr. 81). The VE testified that the hypothetical individual could transfer the skills identified to semi-skilled jobs as a receptionist, appointment clerk, and customer service clerk. (Tr. 80-81, 100). The VE also testified that the hypothetical individual could perform unskilled jobs as an assembler, order clerk, and surveillance system monitor. (Tr. 82).

At the second hearing, a different VE testified. The ALJ recounted to the second VE the hypothetical questions and testimony provided at the first hearing. (Tr. 99-102). After confirming that the second VE understood the prior testimony, the ALJ asked the second VE whether Valentine could transfer her acquired work skills to the semi-skilled jobs identified with a minimum amount of vocational adjustment. (Tr. 102). The second VE testified that "no adjustment" would be needed for Valentine to transfer her acquired skills to those semi-skilled jobs, because there would be a "direct transfer" of skills. (Tr. 103).

## II. STANDARD OF REVIEW

A reviewing court will reverse the ALJ's decision only if the ALJ did not apply the proper legal standards or if the decision was not supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Where the ALJ's findings of fact are supported by substantial evidence, the court is bound by those findings even if it would have decided the case differently. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). Evidence is considered "substantial" if it is less than a preponderance but more than a mere scintilla. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence means

5

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether substantial evidence supports the ALJ's findings, the court may not undertake a *de novo* review of the decision, nor may it re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).

In Social Security cases, the substantial evidence standard applies to motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(c). *See Woody v. Sec'y of the Dep't of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

### III. DISCUSSION

Valentine makes several arguments in support of her motion for summary judgment. First, according to Valentine, the ALJ made several errors in determining that Valentine could readily transfer her acquired skills to other occupations. (D.I. 15 at 2-12). Second, the ALJ purportedly failed to provide any analysis, as required, to support her conclusion that Valentine's impairments did not meet or equal Listing 3.02. (*Id.* at 12-13). Third, the ALJ should have found Valentine disabled before September 18, 2009 due to the results of a May 2009 pulmonary function test. (*Id.* at 13-15). Each of these arguments are addressed in turn.

#### A. Readily Transferrable Skills

Valentine argues that the ALJ's transferability analysis is flawed because the ALJ: (i) did not correctly apply the law in determining that her skills were transferrable to a significant range of skilled work, (ii) never provided or asked for certain information in the colloquy with the second VE, and (iii) included a job in Valentine's past relevant work that should have been excluded. (D.I. 15 at 2-12). None of these arguments identify grounds for reversing the ALJ's decision.

### 1. Significant Range of Skilled Work

Based on a misreading of Rule 201.00(e), Valentine argues that because she was of advanced age and limited to sedentary work, she was disabled unless the ALJ found that her skills were readily transferrable to a "significant range of skilled work." (D.I. 15 at 4 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(e)). According to Valentine, the ALJ ran afoul of Rule 201.00(e), because: (i) she did not identify a "significant range" of occupations; and (ii) she identified semi-skilled, not skilled, work.

A plain reading of Rule 201.00(e) does not support Valentine's suggestion. It reads in relevant part:

> The presence of acquired skills that are readily transferable to a significant range of skilled work within an individual's residual functional capacity would ordinarily warrant a finding of ability to engage in substantial gainful activity regardless of the adversity of age ....

20 C.F.R. Pt. 404 Subpt. P, App. 2, § 201.00(e).

Valentine also cites no authority that supports her interpretation. Valentine relies on the Ninth Circuit's decision in *Lounsburry v. Barnhart* which held that identification of a single occupation to which a claimant could transfer her skills was not a "significant range" of work. *See Lounsburry v. Barnhart*, 468 F.3d 1111, 1117 (9th Cir. 2006). Valentine's reliance is misplaced because, as the Ninth Circuit stated, the definition of "significant range" set forth in *Lounsburry* does not apply to the rules for sedentary work. *Tommasetti v. Astrue*, 533 F.3d 1035, 1043 (9th Cir. 2008). Here, the ALJ proceeded under the rules for sedentary work.

*Loundsburry* is also inapplicable, because the ALJ identified three occupations in her decision, not just one. Valentine relies on the ALJ's typographical error in transcribing the DOT codes to argue that the ALJ identified only two occupations. (D.I. 15 at 5-6). The VE provided the following correct DOT codes for the semi-skilled jobs identified: receptionist is 237.367-038,

7

appointment clerk is 237.367-010, and customer order clerk is 249.362-026. (Tr. 82). In her decision, the ALJ used the appointment clerk's DOT code for the receptionist, and, for the appointment clerk, the AJL used a non-existent DOT code similar to the customer order clerk's DOT code. (*See* Tr. 36 (using 237.367-010 for the receptionist, 249.362-0236 for the appointment clerk, and 249.362-026 for the customer order clerk)). This typographical error does not negate the fact that the ALJ identified three distinct occupations at step five of the disability analysis.

### 2. The Colloquy with the Second Vocational Expert

Valentine quibbles with the ALJ's colloquy with the second VE. According to Valentine, the ALJ erred at the second hearing by: (i) not telling the second VE Valentine's age, (ii) not asking the second VE hypothetical questions based on Valentine's functional limitations, and (iii) not asking the second VE to consider Valentine's social and mental functional limitations. (D.I. 15 at 7-10).

According to Valentine, the ALJ should have told the second VE Valentine's age as of the second hearing. (D.I. 15 at 7-8). The transcript reflects that the ALJ read aloud her notes from the first hearing which included a statement that Valentine was 54 years old. (Tr. 99-101). The ALJ did not clarify that in the first hearing the ALJ said that Valentine was 54 years old at the alleged onset date, which was a correct statement. (Tr. 81). The transcript also reflects that the second VE was present when Valentine testified that she was 59 years old as of the date of the second hearing. (Tr. 91).

Regardless, the ALJ did not commit reversible error. The importance of Valentine's age is whether, as a claimant within an advanced age category, her acquired work skills are transferable to other jobs with "a minimal amount of vocational adjustment." (Tr. 131). The ALJ explored this issue by repeatedly asking the second VE to address "the issue of whether the Claimant could

transfer her acquired work skills with a minimum amount of vocational adjustment." (Tr. 101, 102). The second VE testified that there would be no adjustment. (Tr. 103). In this context, the ALJ elicited the necessary testimony from the second VE regarding the issues related to Valentine's age.

Valentine also claims that the ALJ violated the Appeals Council's remand order by never asking the second VE any hypothetical questions based on Valentine's functional limitations. (D.I. 15 at 7). Hypothetical questions based on functional limitations were posed to the first VE, and the ALJ was not instructed on remand to disregard that testimony. Instead, the Appeals Council instructed the ALJ to "[o]btain *supplemental* evidence" from the second VE regarding whether Valentine had acquired any skills that were transferable with very little, if any, vocational adjustment. (Tr. 131 (emphasis added)). The ALJ obtained that testimony from the second VE.

Contrary to Valentine's claims, the remand order did not state that the ALJ must ask the second VE hypothetical questions based on functional limitations. (D.I. 15 at 7). Instead, the order states: "The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole." Valentine has not shown that the ALJ posed any hypothetical questions to the second VE that did not reflect Valentine's capacity/limitations established by the record. Accordingly, Valentine has not shown that the ALJ failed to comply with the remand order. For these reasons, the ALJ also did not commit reversible error by not asking the second VE to consider Valentine's social and mental functional limitations. (D.I. 15 at 7-10).

### 3. Relevant Past Work

Finally, Valentine argues that the ALJ's transferability analysis considered prior work experience that should have been excluded. (D.I. 15 at 11-12). According to Valentine, Regulation

9

§ 404.1565 prohibits the ALJ from considering prior work unless it was performed within the 15-year window before the date of adjudication. (D.I. 15 at 11). The ALJ considered Valentine's work experience as a retail manager, which was three years before the 15-year window. (Tr. 35).

Regulation § 404.1565 does not contain a strict prohibition against considering work experience outside the 15-year window. Rather, it states that "[w]e do not *usually* consider that work you did 15 years or more before the time we are deciding whether you are disabled ...." 20 C.F.R. § 404.1565 (emphasis added). Moreover, the VE testified that the transferable skills Valentine acquired from her work experience within the 15-year window are "the same skills" she acquired in her work experience outside the 15-year window. (Tr. 80). The ALJ did not consider in her transferability analysis Valentine's managerial skills, the only skill acquired outside the 15-year window. (Tr. 81; Tr. 36-37). As a result, the inclusion or exclusion of the older work experience would not have affected the ALJ's analysis. If it was error to consider the older work experience, the error was harmless.

### B. Listing 3.02

Valentine claims that the ALJ violated the Third Circuit's decision in *Burnett v. Commissioner* by failing to provide any analysis at step three as to whether her impairments met or equaled Listing 3.02. (D.I. 15 at 12). In *Burnett*, the Third Circuit found the ALJ's analysis "hopelessly inadequate" because it did not list the specific impairments he had compared to Burnett's impairment, nor did he discuss the evidence in light of the listed impairments. *Burnett v. Comm'r*, 220 F.3d 112, 119-20 (3d Cir. 2000).

In the wake of *Burnett*, the Third Circuit "has been at pains to circumscribe its holding." *Kowalski v. Barnhart*, 120 F. App'x 890, 893 (3d Cir. 2005). As the Third Circuit explained, "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in

conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

In this case, the ALJ explained her findings in sufficient detail to allow the court to conduct meaningful judicial review. Unlike in *Burnett*, the ALJ listed the sections describing the impairments to which she compared Valentine's condition. (*See* Tr. 30 (stating that the ALJ "carefully considered the specific requirements of 3.00, Respiratory System and 14.00, Immune System Disorders ....")). Moreover, the ALJ's two decisions devoted several pages to discussing in detail the medical evidence related to Valentine's respiratory system. (See Tr. 25-26, 123-124). As a result, *Burnett* can be distinguished from the ALJ's decisions in this case. *See Melvin v. Comm'r of Soc. Sec.*, 226 F. App'x 126, 129 (3d Cir. 2007) (distinguishing *Burnett* because the ALJ identified the three listings relevant to the claimant's impairments and described the medical evidence in the record); *Jaramillo v. Comm'r of Soc. Sec.*, 130 F. App'x 557, 561 (3d Cir. 2005) (distinguishing *Burnett* because the ALJ clearly identified the specific listings to which he was referring and discussed the evidence presented at length).

### C. Disability Onset Date September 19, 2009

Valentine claims that it was "irrational" to find that she was disabled as of September 19, 2009, but not before that date, when the results of a May 2009 pulmonary function test ("PFT") were worse than the results of a December 2009 PFT that supported the DDS' disability finding. (D.I. 13-14). Because the record does not contain the DDS's decision setting forth the grounds on which Valentine was found disabled, the court cannot address this argument. Regardless, the issue remains whether the ALJ should have found Valentine *per se* disabled, because she had a forced

11

expiratory volume ("FEV1") in her May 2009 PFT equal to or less than the values specified in Listing 3.02.

If a claimant's condition meets or equals an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1, that impairment is presumed disabling. 20 C.F.R. § 404.1520(a)(4)(iii). The claimant's alleged impairment must satisfy "*all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original); *Jones v. Barnhart*, 364 F.3d 501, 504 (3d Cir. 2004). "An impairment that meets only some of the criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530.

To meet Listing 3.02 for chronic obstructive pulmonary disease, due to any cause, a claimant must show that for her height, she had a FEV1 value equal to or below a certain threshold. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02(A). However, "test results alone are insufficient to support a claim of disability." *Alexander v. Astrue*, 2008 WL 4091684, at *7 (E.D. Pa. Sept. 2, 2008). There are specific testing protocols that must be satisfied before a reported FEV1 value will be considered evidence that an impairment meets or equals Listing 3.02A. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00E.

At Valentine's reported height was 64 or 65 inches, an FEV1 value equal to or less than 1.25 would meet the listing requirement. *Id.*; (Tr. 512, 515, 752, 831). In the May 2009 PFT, Valentine showed an FEV1 value of 1.07. (Tr. 752). The ALJ discounted the results of Valentine's May 2009 PFT because she provided what her treating pulmonologist described as "only variable effort." (Tr. 32, 34). FEV1 values are supposed to measure the volume of air that can be exhaled with "maximum effort." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00E; *Kraushaar v. Comm'r of Soc. Sec.*, 2012 WL 6953381, at *11 (N.D. Ohio Nov. 26, 2012). Results of a PFT test may be

invalidated when they do not represent a claimant's maximum effort. *See Kowalchick v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 893 F.2d 615, 618 n. 5 (3d Cir. 1990).

In addition, the court notes that the regulations prohibit an ALJ from relying on a PFT where there was no testing after bronchodilators, unless the use of bronchodilators is contraindicated. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00E. The May 2009 PFT shows that testing was not done after bronchodilators and there was no statement that use of the bronchodilators was contraindicated. Accordingly, the ALJ was prohibited by the regulations from relying on the May 2009 PFT to find that Valentine was disabled.

For these reasons, the single PFT in May 2009 with an FEV1 value in the range set by Listing 3.02 did not demonstrate that Valentine's impairments met or equaled Listing 3.02 before September 19, 2009. *See Ford v. Colvin*, 2014 WL 4961155, at *3 (S.D. Ind. Sept. 29, 2014) (affirming an ALJ's decision to discount a single listing-level test result because it did not comply with the documentation and testing requirements of Section 3.00); *Bumgarner v. Colvin*, 2013 WL 3816604, at *5 (W.D.N.C. July 22, 2013) (explaining that the test results did not satisfy Listing 3.02 because there was no record of any post-bronchodilator testing, nor any record of a bronchodilator being contraindicated, as required); *Morris v. Colvin*, 2014 WL 3420765, at *4 (W.D. Okla. July 14, 2014) (finding that a single FEV1 score within the listing requirements did not provide substantial evidence that the claimant met or equal that listing when the numbers were not produced in a satisfactory assessment); *Curry v. Astrue*, 650 F. Supp. 2d 1169, 1178 (N.D. Fla. 2009) (finding that a single PFT did not satisfy claimant's burden at step three where, among other things, there was no statement that the claimant was cooperative and used her best efforts).

## IV. CONCLUSION

For the foregoing reasons, (1) Valentine's motion for summary judgment (D.I. 14) is DENIED; and (2) the Commissioner's motion for summary judgment (D.I. 19) is GRANTED.

An appropriate order will be entered.

Dated: January 19, 2016

_____
UNITED STATES DISTRICT JUDGE